```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                         LONDON
```

| | |
|---|---|
| JERRY ANDERSON, et al., | ) |
| Plaintiffs, | ) Civil Action No. 6:05-573-JMH |
| v. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| MERCK & CO. INC., et al., | ) |
| Defendants. | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

Before the Court are the plaintiffs' motions to amend their complaint [Record No. 17] and to remand [Record No. 19]. Defendants have moved the Court to stay this action pending a transfer decision by the Judicial Panel on Multidistrict Litigation [Record No. 5]. As all motions have been fully briefed, the matters are ripe for review.

### I. BACKGROUND

The plaintiffs originally filed this action in Clay County Circuit Court, alleging harm caused by the prescription drug Vioxx. The complaint asserts claims against Merck & Company, Inc., ("Merck"), the manufacturer, marketer, and seller of the drug, and claims against five Merck pharmaceutical sales representatives,[1] W. Clayton Ely, Vishnu Bhandari, Kevin Jones, David Foley, and

---

[1] In addition, Plaintiffs make claims against unknown pharmaceutical sales representatives. The Court disregards these fictitious defendants when determining the propriety of removal. 28 U.S.C. § 1441(a).

David Yount (hereafter, collectively "Sales Representatives"), who allegedly marketed the drugs to the plaintiffs' physicians. The complaint alleges negligence, negligent misrepresentation, and violations of the Kentucky Consumer Protection Act against the Sales Representatives. Merck removed the action to this Court, claiming that the Court has subject matter jurisdiction based on diversity. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332(a). Plaintiffs are citizens of Kentucky, Merck is a citizen of New Jersey under 28 U.S.C. § 1332(c)(1), and the amount in controversy exceeds the jurisdictional minimum. Because the Sales Representatives are citizens of Kentucky, Plaintiffs argue, their presence in the suit destroys diversity. Merck contends, however, that the Sales Representatives were fraudulently joined so that Plaintiffs could evade federal jurisdiction.

## II. STANDARD OF REVIEW

Although several motions are currently pending, the Court first addresses Plaintiffs' motion to remand.[2] "A motion

---

[2] Merck filed a motion to stay in this case, arguing that the issue of fraudulent joinder should be determined after transfer to the MDL court. Because the determination of whether the Sales Representatives have been fraudulently joined depends on whether Plaintiffs have stated a claim under state law, *see Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999), the MDL court would have to examine the separate law of each state from which one of its cases was transferred. Although courts have gone both ways on this issue, this Court believes that it is in the interest of judicial economy to rule on the motion to remand before transfer. *Compare Farkas v. Bridgestone/Firestone, Inc.*, 113 F. Supp. 2d 1107, 1115 n.8 (W.D. Ky. 2000) (holding that the "jurisdictional issue must be resolved before deciding whether to stay or transfer

questioning subject matter jurisdiction must be considered before other challenges . . . ." *Martin v. Voinovich*, 840 F. Supp. 1175, 1185 (S.D. Ohio 1993). As to Plaintiffs' motion to amend their complaint, the Court will not consider the amended complaint in assessing whether the Sales Representatives were fraudulently joined. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994); *see also Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) (holding that if a court does not limit its review to the complaint as it exists at removal, "disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant").

A case may only be removed if it could have been originally brought in federal court, and as there is no federal question, jurisdiction is only proper in this case if the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332. The party seeking to bring a case into federal court must establish diversity jurisdiction. *Coyne*, 183 F.3d at 493.

---

the case to the MDL panel"), *with Bd. of Trs. of Teachers' Ret. Sys. of Ill. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) (choosing to decide the motion to stay due to the complex legal issues involved in the motion to remand and noting that judicial economy would be served by "having one court rather than three decide complex jurisdictional issues").

The only issue is whether the Sales Representatives were fraudulently joined.[3] The burden is on the defendants to show fraudulent joinder, and as with any dispute over removal, all doubts are to be resolved against removal. *See Brierly*, 184 F.3d at 534; *Alexander*, 13 F.3d at 949. "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493.

The Sixth Circuit has held that "if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, th[e] Court must remand the action to state court." *Id.* Any ambiguities in the relevant state law must be taken in the light most favorable to Plaintiffs. *See Alexander*, 13 F.3d at 949. Thus, the question before the Court is not whether Plaintiffs will prevail at trial on their claims against the named Sales Representatives or whether the Court believes that the Sales Representatives were joined to defeat diversity. *See Jerome-Duncan Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)

---

[3] Although Plaintiffs also argue that removal was defective because Merck failed to obtain the consent of all defendants to removal, *see Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533-34 (6th Cir. 1999), a removing defendant need not obtain the consent of parties who are fraudulently joined. *See Constant v. Wyeth*, 352 F. Supp. 2d 847, 849 (M.D. Tenn. 2003). Whether removal was defective based on a lack of consent is entirely dependent on whether the non-diverse Sales Representatives were fraudulently joined, and thus, the consent issue need not be addressed separately.

4

(holding that a plaintiff's motive in joining a non-diverse defendant is "immaterial to our determination regarding fraudulent joinder"). The question is whether, resolving all ambiguities in favor of Plaintiffs, Merck has shown that there is no colorable basis for predicting that Plaintiffs could prevail against the non-diverse Sales Representatives in state court.

Several courts have noted that the standard for a defendant to show fraudulent joinder is even higher than the standard for succeeding on a motion to dismiss under Federal Rule 12(b)(6). *See Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002) (citing *Hartley v. CSX Transp., Inc.*, 187 F.3d 422 (4th Cir. 1999); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992)). "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6)." *Id.* at 846.

### III. ANALYSIS

Merck argues that Plaintiffs' claims of negligence, negligent misrepresentation, and violations of the Kentucky Consumer Protection Act do not meet the required standard, that is, Plaintiffs have not established colorable claims under state law against the non-diverse defendants. *See Coyne*, 183 F.3d at 493. To begin this fraudulent joinder inquiry and to assess Plaintiffs' claims, the Court must consider the Kentucky law upon which Plaintiffs' claims rest.

5

Plaintiffs allege that Defendants, including the Sales Representatives, failed to disclose, *inter alia*, that Vioxx caused increases in certain medical conditions and that insufficient studies and inadequate testing had been conducted regarding Vioxx's safety, side effects, and adverse effects. Plaintiffs characterize these failures as "misrepresentations . . . perpetrated, directly and indirectly, by Defendants and to the detriment of Plaintiffs, foreseeably causing Plaintiffs to suffer medical conditions." (Compl. ¶ 27.) Under Count 3, entitled "Negligence Against Defendant Drug Reps," Plaintiffs contend that the Sales Representatives "made misrepresentations to each Plaintiffs' physician [and] knew or should have known, that each physician relied upon the information provided to them in deciding to prescribe Vioxx." (*Id.* ¶ 37.) Plaintiffs allege negligent misrepresentation against all Defendants. Plaintiffs claim that the Sales Representatives knew or should have known of the risks associated with Vioxx and promoted the drug to each Plaintiff's physician without warning the physicians of the "serious side effects and dangerous risks to the consuming public." (*Id.* ¶ 41.) Plaintiffs allege that the representations and omissions made by the Sales Representatives to Plaintiffs' physicians were material to Plaintiffs and that "Plaintiffs reasonably relied on misrepresentations and omissions of said Defendants and suffered damages." (*Id.* ¶ 43-44.) Finally, Count 6 alleges violations of

the Kentucky Consumer Protection Act, KRS § 367.110-.300, against all Defendants.

The foregoing represents a summary of what Plaintiffs included in their complaint; crucial to this Court's inquiry, however, is what is missing from these claims. The issue of whether a plaintiff's claim of negligence or fraud against a sales representative who marketed a drug to that plaintiff's physician sets forth a colorable cause of action is not novel, and several courts, including courts in this District, have addressed it. *See, e.g.*, *Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1377 (M.D. Ga. 2004); *Burns v. Wyeth, Inc.*, 352 F. Supp. 2d 773, 777 (E.D. Ky. 2004); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 281 (S.D.N.Y. 2001); *Couch v. Purdue Pharma, L.P.*, No. 01-370, 2002 WL 32097529 (E.D. Ky. Jan. 31, 2002). On the other hand, the Court notes that it has found no case in which a Kentucky court found a sales representative personally liable for negligence or negligent misrepresentation under a fact scenario similar to the facts alleged in this case.

In their efforts to establish duty, breach of duty, and consequent injury, *see Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992), for their negligence claim against the Sales Representatives, Plaintiffs have failed. They have not set forth a colorable cause of action for negligence because their allegations do not show a causal nexus between the Sales

7

Representatives' actions and Plaintiffs' injuries. The Sales Representatives did not have any direct contact with Plaintiffs, and Plaintiffs do not allege otherwise. Instead, Plaintiffs conclude, without alleging any facts to support their conclusions, that the Sales Representatives are liable to each Plaintiff to whose physician each Sales Representative misrepresented the safety of Vioxx and that the Sales Representatives knew or should known that the physicians relied upon the representations of the Sales Representatives in deciding whether to prescribe Vioxx. As the *Couch* court noted, however, "[w]ithout some allegation that [the sales representative] supplied the decedent with [the drug], or otherwise had some contact with the decedent, the Plaintiff has no possibility of recovering against [the sales representative] under her theory of liability," a theory that included a claim for negligence. *Couch*, 2002 WL 32097529, at *2. Defendants have shown that there is no reasonable basis for predicting that Kentucky law might impose liability upon the Sales Representatives for negligence under the facts alleged by Plaintiffs.

Plaintiffs' claim of negligent misrepresentation also fails to present a colorable cause of action. Plaintiffs essentially allege that (1) the Sales Representatives misrepresented the safety of Vioxx to Plaintiffs' physicians, (2) Plaintiffs' physicians relied upon these misrepresentations when deciding whether to prescribe Vioxx to Plaintiffs, and (3) as a result, Plaintiffs suffered

8

injuries.

Plaintiffs rely on *Presnell Construction Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d 575, 582 (Ky. 2004), to support their claim that the Sales Representatives' alleged misrepresentations to Plaintiffs' physicians make them liable to Plaintiffs. But *Presnell*, in which the Kentucky Supreme Court adopted the Restatement (Second) of Torts § 552, does not assist Plaintiffs in their task to present a colorable claim against the Sales Representatives. In *Presnell*, the court adopted the elements of negligent misrepresentation cited by the Restatement § 552, which provides, in pertinent part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977). Although Plaintiffs are correct that an agent is "personably liable for his own tortious acts even though performed within the scope of his employment and under conditions which impose liability upon the principal also," see *Carr v. Barnett*, 580 S.W.2d 237, 240 (Ky. Ct. App. 1979), Kentucky law also provides that "[t]here must be evidence that the individual against whom personal liability is sought to be imposed actively participated in the fraudulent scheme, or was aware of its existence and did nothing about it."

*Commonwealth ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 708 (Ky. Ct. App. 1981).[4]

Plaintiffs allege that they reasonably relied on misrepresentations and omissions of all Defendants, but there is no allegation that the Sales Representatives misrepresented anything to Plaintiffs or in fact had any contact with Plaintiffs. Plaintiffs' attempt to bridge this gap in causation by alleging that the Sales Representatives made misrepresentations to Plaintiffs' physicians, who in turn relied upon that information in deciding whether to prescribe Vioxx to Plaintiffs, does not persuade the Court. If information provided by the Sales Representatives was ever relayed to *Plaintiffs*, Plaintiffs surely would have included those allegations in their Complaint. Notably,

---

[4] The Eleventh Circuit recently addressed similar claims of negligent misrepresentation by an Alabama plaintiff against a pharmaceutical sales representative who promoted the drug Redux to the plaintiff's physician. *Legg v. Wyeth*, 428 F.3d 1317, 1324 (11th Cir. 2005). Noting that Alabama has adopted the Restatement (Second) of Torts § 552 as its law in cases involving negligent misrepresentation, the Eleventh Circuit explained that liability for this tort is predicated on the sales representative owing a duty to the plaintiff. *Id.* (citing *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455 (Ala. 2000)). Because the plaintiff had presented no evidence that the sales representative knew or should have known of the risks associated with the drug, "there is no reasonable possibility that an Alabama court would conclude that [the sales representative] personally breached a duty to plaintiffs." *Id.* The court emphasized that under Alabama law, as a corporate employee, the sales representative would not be personally liable for her company's wrongful action unless she personally participated in the tort — a conclusion that the court could not reach based on the evidence in the record before it. *Id.*

10

Plaintiffs' complaint does not include any such allegations.[5] The facts of this case as alleged by Plaintiffs simply do not fit a cause of action for negligent misrepresentation; therefore, there is no colorable basis for predicting that a Kentucky court would find the Sales Representatives personally liable for negligent misrepresentation.[6]

---

[5] Under section 552, when a defendant "supplies false information for the guidance of others in their business transactions," he is "subject to liability for pecuniary loss caused to them by *their* justifiable reliance upon the information." Restatement (Second) of Torts § 552 (emphasis added). Plaintiffs cannot show "justifiable reliance" when they never allege that they received any information upon which to rely. Kentucky law supports this conclusion. *See, e.g.*, *Goldman Servs. Mech. Contracting Inc. v. Citizens Bank & Trust Co.*, 812 F. Supp. 738, 742 (W.D. Ky. 1992) (finding that because the plaintiff presented no evidence that information from a negligently signed surety certificate was ever presented to it, it could not make a "credible claim of reliance on [the] information"); *Presnell*, 134 S.W.3d at 582 (holding that a contractor could maintain a claim of negligent misrepresentation against a construction manager who "'supplied faulty information and guidance'" to the contractor).

[6] Defendants also argue that Plaintiffs have failed to plead their negligent misrepresentation claims with particularity. In a similar case, *Mathis v. Purdue Pharma L.P.*, No. 02-142-DCR, slip op. (E.D. Ky. Aug. 27, 2002), Judge Reeves noted that because the plaintiffs alleged that the defendant sales representative "knew or should have known" of the drug's defects, the claim of negligent misrepresentation might be construed as a claim for fraud and examined under the heightened pleading standards of Fed. R. Civ. P. 9(b)." *Id.* at 14, n.11 (citing *Minger v. Green*, 239 F.3d 793 (6th Cir. 2001)).

Plaintiffs label their claim as "negligent misrepresentation" against the Sales Representatives, but the Court must "look beyond labels to the facts alleged in the complaint." *Minger*, 239 F.3d at 800. In their complaint, Plaintiffs allege that the Sales Representatives "knew or should have known that dangerous risks were associated with the use of Vioxx." (Compl. ¶ 41.) Plaintiffs fail to plead their claims with particularity and fail to provide factual support for their claims, such as "the time, place, and

Plaintiffs' claims against the Sales Representatives under the Kentucky Consumer Protection Act fail as well. Pursuant to this Act, "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." KRS § 367.170(1). As Plaintiffs do not claim that the Sales Representatives ever sold Vioxx to them,[7] Plaintiffs have not presented a colorable claim against the Sales Representatives for violations of the Kentucky Consumer Protection Act.

Plaintiffs' proposed amended complaint supplements Plaintiffs' claims against the Sales Representatives. The Federal Rules of Civil Procedure provide that a party may amend its pleading by leave of court, leave that shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). However, the Court can deny leave to amend on the basis of undue delay, bad faith or dilatory

---

content of the alleged misrepresentations," as required by Rule 9(b). *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993). The allegations in Plaintiffs' proposed amended complaint are similarly vague and do not meet the requirements of Rule 9(b). *See id.* (finding that the plaintiffs' claim that defendants "'failed to warn plaintiffs of TDI contamination,' without more, does not give rise to fraudulent misrepresentation"). Although "dismissal on this [Rule 9(b)] basis alone would not be appropriate," the Court notes that in addition to their argument that Plaintiffs have not satisfied Rule 9(b) in pleading this negligent misrepresentation claim against the Sales Representatives, Defendants have successfully shown that Plaintiffs have failed to present a colorable claim under Kentucky law. *Id.*

[7] Referring to KRS § 367.220, which provides a private right of action under the Act, the court in *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*, 836 S.W.2d 907 (Ky. Ct. App. 1992), held that "[t]he language of the statute plainly contemplates an action by a purchaser against his immediate seller." *Id.* at 909.

12

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A]n amendment may not be allowed if the complaint as amended could not withstand a Fed. R. Civ. P. 12(b)(6) motion." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991).

In their proposed amended complaint, Plaintiffs do not include any allegations to support a causal nexus between the Sales Representatives' actions and Plaintiffs' injuries. Furthermore, Plaintiffs never claim that the Sales Representatives' alleged misrepresentations were ever communicated to Plaintiffs — neither by the Sales Representatives nor by Plaintiffs' physicians. Therefore, even after taking into account the allegations in Plaintiffs' amended complaint, the Court finds that Defendants have shown that there is no colorable basis for predicting that Plaintiffs could prevail against the non-diverse Sales Representatives in state court. Because the standard for a defendant to show fraudulent joinder is even higher than the standard for succeeding on a motion to dismiss under Federal Rule 12(b)(6), *see Little*, 227 F. Supp. 2d at 845-46, allowing Plaintiffs to amend their complaint would be futile.

Finally, Defendants have moved the Court to stay this case pending a transfer to the Judicial Panel on Multidistrict

13

Litigation. The reason an MDL is established is to provide for "the convenience of parties and witnesses and . . . promote the just and efficient conduct" of complex matters such as the Vioxx litigation. 28 U.S.C. § 1407. Entry of a stay would serve these purposes.

## IV. CONCLUSION

Despite the deferential level of scrutiny to be given in a fraudulent joinder analysis and the heavy burden on a defendant seeking to prove fraudulent joinder, Defendants have met that burden. Plaintiffs have not stated a claim against the non-diverse Sales Representatives that may be colorable in state court. As the Court finds that the Sales Representatives were fraudulently joined, the claims against them are disregarded for the purposes of determining diversity jurisdiction. Therefore, because diversity exists between Plaintiffs and Defendant Merck and the amount in controversy is satisfied, removal was proper pursuant to 28 U.S.C. §§ 1332 and 1441.

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That Plaintiffs' motion to remand [Record No. 19] be, and the same hereby is, **DENIED**.

(2) That Plaintiffs' motion to amend their complaint [Record No. 17] be, and the same hereby is, **DENIED**.

(3) That Defendants' motion to stay [Record No. 5] be, and the same hereby is, **GRANTED**.

(4) That this action be and the same hereby is, **STAYED**, pending transfer to the Judicial Panel on Multidistrict Litigation.

This the 28th day of February, 2006.



Signed By:
*Joseph M. Hood*
United States District Judge